# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**WEDDING & EVENT VIDEOGRAPHERS
ASSN. INTERNATIONAL, INC.,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　**Case No.  8:04-cv-2506-SDM-MSS**

**VIDEOCCASION, INC. *et al.*,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

An Injunction Hearing was held before the Undersigned on Friday, March 4, 2005, during which the parties presented oral argument on Plaintiff's Motion for Preliminary Injunction (Dkt. 23), Defendants' response thereto (the "Response") (Dkt. 31)[1] and Defendants' Motion to Strike, Motion to Dismiss Counts IV, V, VI and VII of the Amended Complaint and Memorandum of Law (Dkt. 30) (the "Motion to Strike and Dismiss").[2]

Upon consideration and being otherwise advised, for the reasons listed below, the Undersigned recommends that Plaintiff's Motion for Preliminary Injunction (Dkt. 23) be **DENIED** and Defendants' Motion to Strike and Dismiss (Dkt. 30) be **DENIED**.

---

[1]  On March 4, 2005, Plaintiff filed a Supplemental Memorandum in Support of its Motion for Preliminary Injunction (Dkt. 35).

[2]  Both the Motion for Preliminary Injunction and the Motion to Strike and Dismiss were referred to the Undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b).

## I.   Preliminary Injunction

### A.   Findings of Fact

1.   Plaintiff, Wedding & Event Videographers Association International, Inc. ("WEVA" or "Plaintiff") is a professional trade association operating as a Florida non-profit corporation based in Sarasota. Specifically, Plaintiff offers continuing education programs, group benefits and professional development training to wedding and event vidoegraphers. (Dkt. 23, ¶ 1).

2.   WEVA developed and maintains a comprehensive and multi-segmented database containing information about WEVA event attendees that it uses for planning and advertising purposes (the "WEVA database"). (Dkt. 35, Exh. 1, Chap. Aff. ¶ 2).

3.   The WEVA database is treated as confidential. Access is restricted internally to only those individuals provided with a password by WEVA's internet technology systems manager. (Dkt. 35, Exh. 1, Chap. Aff. ¶ 8).

4.   A percentage of videographers whose information is contained in the WEVA database pay WEVA a fee (the "Listing Fee") to have their contact information made available to the public through a listing on WEVA's website under the subheading "Member Links." The information of those who opt not to pay the Listing Fee remains in the confidential section of the WEVA database and is not accessible by the public. (Dkt. 35, Exh. 1, Chap. Aff. ¶ 7).

5.   Defendants, Videoccasion, Inc., Steven M. Wernick ("Mr. Wernick"), the owner and operator of Videoccasion, Inc. and Timothy Ryan ("Mr. Ryan") d/b/a Treasured Memories, a sole proprietorship, (collectively, "Defendants") were retained by WEVA, in part to

promote, coordinate and manage various educational events by WEVA throughout the United States.  (Dkt. 23, Exh. A Chap. Aff., ¶¶ 4-6).

6.  Mr. Wernick, in his capacity as a videographer in the northeast, developed and maintained a separate contact list for a period of time before and after his employ at WEVA.  At some point during his employ with WEVA, in or around October 2001,  Mr. Wernick, with the knowledge of WEVA's internet technology systems manager, comingled his contact list with that of the confidential WEVA database.  (Dkt. 23, Exh. B, Cannata Aff. ¶ 7).

7.  During the Injunction Hearing, neither party suggested that it is possible to segregate from the WEVA database the names that were comingled by Mr. Wernick.

8.  During their employ with WEVA, Defendants were provided with passwords so that they could perform their professional duties and responsibilities.  (Dkt. 35, Exh. 1, Chap. Aff. ¶ 8).

9.  During their employ, Defendants did not sign either a confidentiality agreement or a non-compete agreement.  (Dkt. 31, ¶ 6).

10.  Defendants worked at WEVA from 1998 until their termination in June of 2004. (Dkt. 23, ¶ 12).

11.  Upon termination, Defendants' passwords were revoked and their access to the WEVA database blocked.   (Dkt. 23, Exh. A, Chap. Aff. ¶ 21).

12.  After their termination, Defendants formed the 4EVER Group ("4EVER"), a network of professional videographers, and announced their intention to compete with WEVA.  (Dkt. 23, Exh. A, Chap. Aff. ¶ 23 and Exh.1 and 2).

13.    Defendants have made contact with former WEVA event attendees, Mr. Randall Bridges ("Mr. Bridges") and Mr. Chuck Boyd ("Mr. Boyd") via e-mail.  Mr. Bridges and Mr. Boyd do not have their contact information available on the publicly accessible Member Links section of WEVA's website; however, both men attended past WEVA events and their information appears in the confidential WEVA database.  (Dkt. 23, Exh. A, Chap. Aff. ¶ 24 and Composite Exh. C).

### B.    Procedural History

1.    Plaintiff filed suit on November 17, 2004. (Dkt. 1).  On February 7, 2005, Plaintiff filed an Amended Complaint alleging Federal Trademark Infringement, Conversion, Defamation and Tortious Interference with a Business Relationship.  The Amended Complaint seeks injunctive relief and damages under the Florida Trade Secret Misappropriation Act, Fla. Stat. § 688.001, *et seq.* (2004), as well as an action pursuant to the Florida Deceptive and Unfair Trade Practices Act or "FDUTPA," Fla. Stat. § 501.201, *et seq.* (2004), for a declaratory judgment that Defendants are engaging in unfair and unconscionable competition and trade practices and for injunctive relief proscribing such conduct. (Dkt. 21).

2.    The District Court Judge denied Plaintiff's *ex parte* Motion for a Temporary Restraining Order.  The Court reasoned that Plaintiff's motion was merely an application for a preliminary injunction and failed to address the additional requirements of the Local and Federal Rules for an *ex parte* temporary restraining order.  (Dkt. 6).

3.    On March 4, 2005, the Undersigned held a hearing to address Plaintiff's Motion for Preliminary Injunction.  The Court received evidence and heard arguments of counsel.

**C.    Discussion**

Plaintiff's Motion for Preliminary Injunction initially asked the Court to issue a preliminary injunction on the grounds that Defendants have and continue intentionally to misappropriate Plaintiff's trade secrets and confidential information and have used and continue to use Plaintiff's registered trademark.

Plaintiff is seeking a preliminary and permanent injunction enjoining and restraining the Defendants directly or indirectly, whether alone or in concert with others, including any officer, advisory board agent, representative, and/or employee, from using, disclosing, or transmitting for any purpose the trade secret information/confidential information of WEVA.  Such use, disclosure or transmission includes, but is not limited to: (1) contacting and soliciting existing WEVA members known to them from the confidential data; (2) using WEVA marketing strategies; (3) using WEVA marketing and financial data; and, (4) contacting WEVA customers, clients, members, speakers, event instructors, vendors and sponsors and event attendees known to them only through the confidential information of WEVA. (Dkt. 23 at 6).

At the Injunction Hearing and in related affidavits, Plaintiff did not proffer evidence with respect to Defendants' alleged use of marketing strategies or marketing and financial data. Additionally, Defendants stated in their Response that they are not using Plaintiff's trademark for any purpose at this time, and Plaintiff informed the Court that Defendants have stopped using Plaintiff's registered trademark for any purpose.  (Dkt. 31, ¶ 22).  Thus, the request for an injunction as to the marketing strategy, financial data and trademark is no longer before the Court. Accordingly, the only issue pending, presented and briefed is whether Defendants should be preliminarily enjoined from intentionally misappropriating WEVA's contact information from the

WEVA database on grounds that WEVA's customer lists are protected trade secrets or constitute protectible confidential business information.

A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' as to the four requisites." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).  To establish entitlement to preliminary injunctive relief, the moving party must establish: (1) a substantial likelihood of ultimately prevailing on the merits; (2) irreparable injury; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that public interest will not be harmed if the injunction should issue.  United States v. Lehder-Rivas, et al., 669 F. Supp. 1563, 1571 (M.D. Fla. 1987).  Plaintiff notes that injunctive relief is especially appropriate in cases concerning misappropriations of trade secrets.  Florida law expressly authorizes injunctive relief in cases of actual or threatened misappropriation of trade secrets pursuant to Fla. Stat. § 688.003 (2004).  If it is found that a former employee used a specific trade secret in his or her new employment, irreparable harm is presumed.  See Lovell Farms v. Levy, 641 So. 2d 103, 105 (Fla. 3d DCA 1994).

The evaluation of Plaintiff's likelihood of success must be conducted in the context of the law applicable to the claim.  Florida law addressing misappropriation of trade secrets is applicable. Florida law describes a trade secret as consisting of information that: 1) derives economic value from not being readily ascertained by others; and 2) is the subject of reasonable effort to maintain its secrecy.  American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998) (citing generally the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq*. (2004)).

Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection. Id. (citing Besttechnologies, Inc. v. Trident Envtl. Sys., Inc., 681 So. 2d 1175, 1176 (Fla. 2d DCA 1996)). In addition, an employer may not preclude a former employee from "utilizing contacts and expertise gained during his former employment." Id. (citing Templeton v. Creative Loafing Tampa, Inc., 552 So. 2d 288, 290 (Fla. 2d DCA 1989)). Finally, in a trade secret action, Plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect that secrecy. Id. (citing Lee v. Cercoa, Inc., 433 So. 2d 1, 2 (Fla. 4th DCA 1983)).

Injunction orders cannot be impermissibly vague. Federal Rule of Civil Procedure 65(d) provides, in pertinent part that "[e]very order granting an injunction . . . shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained...." Fed.R.Civ.P. 65(d). Under this rule, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." Id. (citing Hughey v. JMS Dev., 78 F.3d 1523, 1531 (11th Cir. 1996)).

Defendants assert that Plaintiff cannot meet this heavy burden of persuasion, contending that what Plaintiff claims is a "trade secret" is, in fact, no secret at all. Defendants claim that from 2000 through 2004, pursuant to instructions given to Mr. Wernick from WEVA President, Roy Chapman, Mr. Wernick began comingling the list of contacts he had created with WEVA's members and list of persons attending WEVA events. Plaintiff's President, Mr. Chapman, denies that he ever instructed Mr. Wernick to comingle any list of his with the list of WEVA event attendees. However, Plaintiff acknowledges, through affidavit, that comingling occurred, although Plaintiff cites a

beginning date for the comingling of 2001.  The Affidavit of Edward Cannata, attached as Exhibit

B to Plaintiff's Motion for Preliminary Injunction (Dkt. 23) reads, in pertinent part:

> Prior to the termination of Ryan's and Wernick's relationships with WEVA, Ryan had been maintaining his own personal list of videographers; and sometime after October 2001, Ryan began merging the e-mail lists of WEVA town meeting registrants contained in the WEVA confidential database with his own personal e-mail list, which he told me was for the purpose of marketing WEVA related products and services.

(Dkt. 23, Exh. B, Cannata Aff. ¶ 7).

The ultimate question before the Court in this case then is whether this comingling or merger

of information may likely result in the loss to Plaintiff of a viable claim of exclusive ownership of

the WEVA database.  That is, whether the information in the database at issue belongs to Plaintiff,

and, if not, whether its value, even if significant, is Plaintiff's exclusively to enjoy.  This question

also implicates the second indicia of a trade secret under Florida law, whether sufficient efforts were

maintained to protect secrecy.  If the database at issue is not exclusively Plaintiff's, Plaintiff may not

enjoy a privilege of secrecy *vis-a-vis* Defendants.   If Plaintiff cannot at this time establish exclusive

ownership of the entire list or reconstruct the list to include only those persons who came to the

knowledge of the parties through WEVA, Defendants contend Plaintiff cannot establish "substantial

likelihood of success on the merits" and its request for a preliminary injunction must therefore fail.

Defendants are correct in their assertion of applicable law.

Only the "owner" of a trade secret has an action for misappropriation under the Florida

Uniform Trade Secrets Act.  Likewise, the trade secret privilege contained in Florida's Rules of

Evidence inures only to the owner of a trade secret.  See Gary S. Gaffney *et al.*, A Primer on Florida

Trade Secret Law: Unlocking the "Secrets" to "Trade Secret" Litigation, 11 U. Miami Bus. L. Rev.

1, 10 n.24 (2003) (stating that Fla. Stat. §§ 688.002(2)(a) and (b) specifically provide that the wrongful acquisition or disclosure of a trade secret "of another" constitutes misappropriation, and section 90.506, which provides that only the "owner" of a trade secret may raise the privilege of non-disclosure."); see also Del Monte Fresh Produce Co. v. Dole Food Co., Inc., 136 F. Supp 2d 1271, 1293 (2001) (citing Fla. Stat. § 688.002(2)(b)) and Del Monte Fresh Produce Co. v. Dole Food Co., Inc., 148 F. Supp 2d 1322, 1324 (2001) (citing Fla. Stat. § 90.506).

While not from this Circuit, New Method Die & Cut-Out Co. v. Milton Bradley Co., et al., 289 Mass. 277 (1935),  is instructive on this point.  The New Method court was asked to overturn an interlocutory ruling in which the plaintiff took exception to findings in a report prepared by a special master assigned to the case.   The plaintiff brought suit in equity to establish its right as to a trade secret for a process of manufacturing toys from cardboard and to enjoin the defendants, a former employee named Church and his new employer, Milton Bradley Company, from further disclosure of this trade secret.  The essential feature of the plaintiff's trade secret claim was that although the elements comprising the process at issue were not in and of themselves trade secrets, the plaintiff's novel combination of the process elements was.

As in the case before this Court, Church never signed a confidentiality or any other similar agreement and the process of manufacturing toys from cardboard was not fully developed when Church entered New Method's employ.  Moreover, Church did not learn about the process solely because of his employ at New Method.  The New Method court found, in fact, that Church played a substantial role in the development of the process at issue.  Also, as in the case sub judice, the claimed trade secret information was not a trade secret in and of itself.  The New Method court concluded that the plaintiff was not entitled to the exclusive use of the process at issue because

Church had worked in conjunction with the plaintiff's officers in the development of a process of manufacturing toys through the combining of elements not in and of themselves trade secrets; was not specifically hired for that purpose; made contributions to the process; and, had never signed a non-compete or confidentiality agreement.  New Method at 283.

＿＿＿＿＿＿While an old case, the logic of the New Method court has survived and is often quoted in more recent cases, either directly or indirectly, as well as in treatises.  For example,  New Method is cited directly in Structural Dynamics Research Corporation v. Engineering Mechanics Research Corporation, 401 F. Supp. 1102 (E.D. Mich.1975).  There a former employer brought an action against former employees and the employees' subsequent employer for, among other things, misappropriation and misuse of confidential and trade secret material.  The Structural Dynamics court found that the subject matter of the trade secret, in this case a computer program, was brought into being because of the initiative of the employee in its creation, innovation and development.  Thus, even though the relationship between employee and employer was one of confidence, no duty not to use or disclose trade secret knowledge adverse to the employer arose.  The court reasoned that the employee had an interest in the subject matter at least equal to that of his employer and, in any event, such knowledge was a part of the employee's skill and experience.  The court concluded that in such a case, absent an express contractual obligation by the employee not to use or disclose such confidential information acquired during his employment adverse to the employer's interest, the employee was free to use or disclose the information in subsequent employment.  Structural Dynamics at 1111-12.

The logic of <u>New Method</u> also appears in a recent case from the Third District Court of Appeals in Florida, <u>Sethscot Collection, Inc. v. Drbul</u>, 669 So. 2d 1076 (Fla. 3d DCA 1996), decided under Florida law.  The <u>Sethscot</u> court concluded:

> [B]ecause the parties never entered into a non-compete agreement . . . the defendant is in no way enjoined from competing with the plaintiffs, including contacting and soliciting business from the sororities and fraternities that plaintiffs have conducted business with.  Moreover, although the defendant is enjoined from utilizing the active customer list, the defendant is "not precluded from utilizing contacts and expertise gained during his former employment or *even customer lists he himself developed*." (string cite omitted).

<u>Id</u>. at 1078 (emphasis added).

To the same effect is Section 275 of the *Corpus Juris Secundum,* which reads in pertinent part: "injunctive relief is not available against the use of customer lists by former employee or his or her subsequent employer where the lists are not secret or confidential or have not been surreptitiously copied or removed.  The rule is especially applicable where the names of customers are readily available from other sources or were compiled, at least in part, by the employee him or herself, and were not derived from any confidential information, and did not constitute a trade secret."  43A C.J.S. *Injunctions* § 275 (2004) (internal citations omitted).

Courts within Florida, as well as throughout the country, offer varying opinions on whether customer lists constitute "trade secrets" in the first instance.  Courts finding that such lists do constitute trade secrets find that the lists in question have been compiled through the industry of their claimed owner and are not simply a compilation of information commonly available to the public. <u>See, e.g.</u>, <u>Kavanaugh v. Stump</u>, 592 So. 2d 1231 (Fla. 5th DCA 1992).  As noted, Mr. Wernick here claims that he is using only contact information that he specifically compiled through his individual knowledge of and years in the video industry or because he met the individual in question at a

WEVA event. (Dkt. 31, Attach. 1, ¶ 3; Dkt. 31, ¶ 11).  Under Florida law, soliciting known contacts is acceptable.  See, e.g., Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (Fla. 2d DCA 1989) (holding that a former employee could not be precluded from utilizing contacts and expertise gained during employment because defendant knew the contacts and use of a "secret" list was unnecessary). As noted earlier, whether or not Plaintiff's confidential list is compiled from information equally available to Defendants from their previous sources is the subject of much record debate.

During the Injunction hearing, Plaintiff was not able to produce any evidence that the information in the WEVA database belongs exclusively to it.  As noted, Defendants claim that Mr. Wernick, at Mr. Chapman's direction, began as early as 2000, to "comingle" his personal contact lists with information in the WEVA database.  Plaintiff, while claiming that Mr. Wernick did not have permission from Mr. Chapman to comingle, does not deny that such comingling occurred. Plaintiff, through the affidavit of Edward Cannata, confirms that Mr. Wernick had been comingling his contact information with information in the WEVA database, since at least 2001.  Thus, to date as the record stands, Plaintiff cannot claim exclusivity as to the full contents of the confidential section of the WEVA database.  In fact, the parties disagree as to when the commingling began.  The open section of the WEVA database, of course, is available to anyone who browses Plaintiff's website, which contains under its "Member Links" section the contact information for and hyperlinks to the websites of those WEVA members who paid the Listing Fee for the express purpose of having their contact information made available to the public.

Plaintiff contends that the confidential section of the WEVA database is comprised of, among other things, contact information from WEVA event attendees and is not readily available to the

-12-

public.  Plaintiff offers as evidence the affidavits two former WEVA attendees, Mr. Bridges and Mr.

Boyd, contacted by WEVA for the express purpose of taking their affidavits on this issue.  Mr.

Bridges and Mr. Boyd attest that they were contacted by Defendants via e-mail despite, as they

claim, never having provided Defendants with any such contact information.  Although these two

individuals would presumably not have been on Defendant's side of the comingled list ledger,

Plaintiff offers no evidence on this issue either.   In response, Defendants claim that the contact

information for the people and businesses, such as the two affiants, comprising the WEVA database

is either publicly available through the public "Member Links" section of Plaintiff's website or

through other companies, such as <u>Videography Magazine</u> or <u>Videomaker Magazine</u>, that make

contact information for videographers publicly available. (Dkt. 31, ¶ 8).  Notably, however,

Defendants do not specifically contend that they procured the names of these two specific former

WEVA attendees from the Member Links or other sources mentioned above.

Plaintiff argues alternatively that the WEVA database is "segmented" into specific lists in

order to better target potential WEVA attendees based on past attendance at WEVA functions.

Plaintiff offered no proof, however, that Defendants were using this targeted information from the

WEVA database.  Plaintiff may be entitled to trade secret protection for its specific and targeted

specialized lists within the WEVA database.  <u>See, e.g.</u>, <u>Unistar Corp. v. Child</u>, 415 So.2d 733 (Fla.

3d DCA 1982).  In <u>Unistar</u>, the court found that the employer's list qualified as a trade secret and

enjoined defendants from contacting and selling to the former employer's customers even in the

absence of an express agreement not to compete or not to disclose trade secrets.  The <u>Unistar</u>  court

found that the employer's customer list qualified as a trade secret because the list was kept

confidential and was a distillation of a larger list created from public sources that reflected actual

customer interest and activity requiring considerable effort, knowledge, time and expertise to create. Unistar at 734.

In this case, however, to date Plaintiff has failed to adduce evidence that Defendants used targeted customer marketing data.  On the record developed thus far, Plaintiff has failed to demonstrate anything other than that Defendants at one point had access to the confidential section of the WEVA database and *may* have used confidential information related to customers of WEVA from it on two occasions.

While Plaintiff claimed during the Injunction Hearing that a forensic analysis of Defendants' computers was forthcoming, Plaintiff produced no information verifying Plaintiff's allegation that Defendants have, in fact,  accessed or downloaded any confidential information from the WEVA database.  While Mr. Wernick does admit that he may have kept the contact list that he personally assembled during his tenure at WEVA, he maintains that the information comprising this list was not obtained through improper means.

Thus, to date, Plaintiff has not met its burden of proving that it is likely to succeed in its efforts to establish that the information at issue was kept secret by adequate measures and, as against Defendants, is exclusively Plaintiff's to use and access.

### *Injunction Requirements under the Federal Rules of Civil Procedure*

Plaintiff faces an additional impediment to the receipt of the injunctive relief that it seeks. Assuming, arguendo, that despite the alleged comingling, Plaintiff were still entitled to a preliminary injunction to protect its portion of the WEVA database, Plaintiff has not established that the Court could, on the facts developed to date, with the specificity required under Rule 65(f), craft an injunction tailored to prevent Defendants from contacting Plaintiff's exclusive members.   As

-14-

noted, neither party can at this juncture produce a reconstructed list that culls or segregates Plaintiff's contacts from Mr. Wernick's contacts.

During the Injunction Heating, Plaintiff offered several suggestions - limit Defendants' use to publicly available information or limit Defendants' use to videographers located in the counties in New York and Pennsylvania, the states in which Defendants live. The Court finds that these suggested "fixes" are unhelpful under the circumstances before it. These proposals concededly are not targeted toward evidence as to the constitution of the lists. Rather, these alternative proposals seek to shift the burden of Plaintiff's failure of proof to the Court or Defendant.

## D.    Conclusion

Based on the foregoing, the Undersigned finds that on the record as it stands today, Plaintiff is not entitled to a preliminary injunction. This is not to say that Plaintiff will not be entitled to injunctive relief at some point; however, at this point in the proceedings, Plaintiff has failed to demonstrate the requisite "substantial likelihood of success" that would entitle it to injunctive relief and has failed to show it is possible to craft an injunction on the evidence adduced to date that is specific enough to meet the criteria established under the Federal Rules of Civil Procedure. Therefore, the Undersigned respectfully recommends that Plaintiff's Motion for Preliminary Injunction (Dkt. 23) be **DENIED**.

## II.    Defendants' Motion to Strike and Dismiss

The Undersigned also considered Defendants' Motion to Strike and Dismiss (Dkt. 30) during the Injunction Hearing. Defendant's Motion to Strike and Dismiss asks the Court to strike portions of Plaintiff's Amended Complaint in which Plaintiff seeks punitive damages and to dismiss Counts IV, V, VI and VII of Plaintiff's Amended Complaint.

-15-

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt the plaintiff can prove no set of facts that would entitle the plaintiff to relief.  Conley v. Gibson, 355 U.S. 41, 45 (1957).   In deciding a motion to dismiss, the court is limited to an examination of only the four corners of the complaint. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).   The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.  Lamar Advertising of Mobile, Inc. v. City of Lakeland, 980 F. Supp 1455 (M.D. Fla. 1997)(citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985)).  Against this standard, Defendants' Motion to Strike and Dismiss fails.

### A.   Punitive Damages

First, Defendants ask the Court to strike those portions of Plaintiff's Amended Complaint in which Plaintiff seeks punitive damages.  Defendants' Motion to Strike and Dismiss reads, in pertinent part, as follows:

> 1.   Throughout its Amended Complaint, the Plaintiff . . . seeks recovery of "punitive damages"against the Defendants. See Amended Complaint, Count I, p. 16, ¶ 4; Count II, p. 19, ¶ 7; Count III, p. 20; Count IV, p. 24; Count VIII, p. 27.  These allegations must be stricken from Plaintiff's Amended Complaint as Plaintiff has not made a reasonable showing by evidence on the record which would provide a reasonable basis for recovery of such damages.  See Fed. R. Civ. P. 12(f).

> 2.   Under Florida law, the Plaintiff may not assert a claim for punitive damages unless it first makes a reasonable showing by evidence in the record which would provide a reasonable basis for recovery of such damages.  See Section 768.72, Fla. Stat. (2004).  This statute is substantive and therefore can be applied to federal court in federal actions. See Fletcher v. State of Florida, 858 F. Supp. 169, 173 (M.D. Fla. 1994); Marcus v. Carrasquillo, 782 F. Supp. 593 (M.D. Fla. 1992).

(Dkt. 30 at 1-2).

Defendants' request is now moot. During the Injunction Hearing, Plaintiff stated, and Defendants acknowledged, that Plaintiff brought its trademark violation claim under Federal subject matter jurisdiction, specifically the Federal Trademark Infringement Statute, 15 U.S.C. § 1051, *et seq.* (2004). Thus, the state law requirement cited by Defendants is inapplicable and no "reasonable showing by evidence in the record which would provide a reasonable basis for recovery of such damages" is required. See Smith v. GTE Corp., 236 F.3d 1292 (11th Cir. 2001) (citing Cohen v. Office Depot, Inc., 184 F.3d 1292 (11th Cir. 1999), for the proposition that Fla. Stat. § 768.72 does not apply to cases filed in Federal court); see also Section 768.72, Fla. Stat. (2004). Based on Defendants' stipulation, the Undersigned recommends that Defendants' request to strike all claims for punitive damages as alleged in Plaintiff's Amended Complaint be **DENIED as MOOT**.

## B.    Counts IV and VII

Plaintiff's Amended Complaint asserts a claim against Mr. Wernick and Mr. Ryan for tortious interference with an advantageous business relationship. See Dkt. 21, Count IV, ¶¶ 66-90. Plaintiff refers in paragraphs 15 and 16 of the Amended Complaint to Mr. Ryan as "Director of Media Relations" and to Mr. Wernick as "Director of WEVA Media Relations." Paragraphs 15 and 16 are incorporated by reference into Count IV.

Defendants contend that "[a]s officers and/or directors of WEVA, as alleged in Plaintiff's Amended Complaint, Mr. Ryan and Mr. Wernick are not personally liable for monetary damages to WEVA. See Section 617.0834, Fla. Stat. (2004). Accordingly, Count IV of Plaintiff's Amended Complaint must be dismissed as a matter of law...." (Dkt. 30 at 3).

Plaintiff's Amended Complaint asserts a claim against Mr. Wernick for Defamation. See Dkt. 21, Count VII, ¶¶ 100-106. Defendants again reference Mr. Wernick's status as Director of

-17-

WEVA Media Relations and cite to Section 617.0834 of the Florida Statutes for the proposition that Count VII of Plaintiff's Amended Complaint must be dismissed as a matter of law.

Defendants' arguments as to Counts IV and VII are not supported by a plain reading of paragraphs 15 and 16 of Plaintiff's Amended Complaint in which Defendants' job titles and related responsibilities are discussed in some detail.   In addition, during the Motion Hearing, Plaintiff stipulated, and Defendants' counsel acknowledged, that both Mr. Ryan and Mr. Wernick never served on the Plaintiff's Board of Directors. Plaintiff's stipulation confirmed what its Complaint clearly alleges that the title of "Director" given to Defendants' positions did not signify that either Defendant served in any capacity on Plaintiff's Board of Directors.   Thus, the Undersigned recommends that Defendants' Motion to Strike and Dismiss requests as to both Counts IV and VII on the basis of Florida Statute § 617.0834 be **DENIED**.

C.     **Count V**

Plaintiff's Amended Complaint asserts a claim against Defendants for violations of the Florida Deceptive and Unfair Trade Practices Act or "FDUTPA" (Fla. Stat. § 501.201, *et seq*.).  See Dkt. 21, Count V, ¶¶ 91-96.  Defendants, citing to and basing their arguments on the pre-July 1, 2001, version of FDUTPA, claim that only a "consumer" may recover actual damages for unfair trade practices.   Thus, Defendants assert, because Plaintiff is not a consumer, Plaintiff cannot recover.

Plaintiff, citing to Niles Audio Corp. v. OEM Systems Co., Inc., 174 F. Supp. 2d 1315 (S.D. Fla. 2001), reminded Defendants that FDUTPA was modified in 2001.  As the Court in Niles stated:

Prior to July 1, 2001, Section 501.211 of FDUTPA provided:

(1)     Without regard to any other remedy or relief to which a person is

entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

(2)      In any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages.

. . .

The Florida Legislature recently amended several sections of FDUTPA, including § 501.211(2), effective July 1, 2001. Section 501.211(2) now reads:

In any action brought by a *person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105.

(Niles at 1319) (emphasis added).

Based on the foregoing, the Undersigned recommends that Defendants' Motion to Strike and Dismiss as to Count V on the basis of pre-2001 FDUTPA be **DENIED as MOOT**.

### D.      Count VI

Plaintiff's Amended Complaint asserts a claim against Mr. Wernick for Breach of Agreement.  See Dkt. 21, Count VI, ¶¶ 97-99.  Defendants claim that Plaintiff cannot assert a "Breach of Agreement" claim because under Florida law, no such claim exists.  Defendants' argument is based on semantics, not substance.  The Amended Complaint, as pled, places Mr. Wernick on sufficient notice that he is being sued for breach of contract.  The Complaint provides the information necessary for Defendant Wernick to respond properly to Plaintiff's allegations.

As such, the Undersigned recommends that Defendants' Motion to Strike and Dismiss as to Count VI be **DENIED**.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 5th day of May 2005.

MARY S. SCRIVEN
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).

Copies furnished to:

Judge Steven D. Merryday
Counsel of Record